UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW R. PERRONG<br>1657 The Fairway #131 Jenkintown, PA 19046<br><br>Plaintiff,<br>vs.<br><br>MANAGEMENT SOLUTIONS GROUP, LLC<br>d/b/a The Lead Jerk<br>1995 HOLLAND PARK DRIVE<br>BUFORD, GA 30519<br><br>ALISON S. LOWERY,<br>1995 HOLLAND PARK DRIVE<br>BUFORD, GA 30519,<br><br>MATTHEW C. LOWERY,<br>1995 HOLLAND PARK DRIVE<br>BUFORD, GA 30519,<br><br>and<br>DOES 4 through 100, inclusive,<br><br>Defendants. | Civil Action<br>No. 2019-2000<br>Formerly Perrong v. Lynn<br><br><br><br>FILED<br>JUN 19 2019<br>KATE BARKMAN, Clerk<br>By_____ Dep. Clerk<br><br><br><br>Jury Trial Demanded |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff ANDREW R. PERRONG brings this action for damages, restitution, reinstatement, statutory damages, punitive damages, sanctions, interest, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of MANAGEMENT SOLUTIONS GROUP, LLC d/b/a The Lead Jerk, ALISON S. LOWERY, MATTHEW C. LOWERY, and Does 4 through 100, inclusive, in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls"), by utilization of an automatic telephone dialing system, in violation of the Telephone Consumer Protection Act, 47

1

U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. This is an amended complaint. As will be detailed in a separate filing, Plaintiff is amending the complaint to include the actions of the lead generator hired by the former Defendants in this case, DANA and JOSEPH LYNN, who are no longer included in this action, having been dismissed with prejudice. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I. Introduction

1. Defendant MANAGEMENT SOLUTIONS GROUP, LLC d/b/a The Lead Jerk (Hereinafter, "The Lead Jerk") is a company located and domestically incorporated in the State of Georgia. The Lead Jerk's principal business is offering insurance telemarketing leads, primarily for burial insurance policies, to insurance agents throughout the United States. The Lead Jerk maintains a mailing address and address for service of process at 1995 HOLLAND PARK DRIVE, BUFORD, GA 30519.

2. Plaintiff brings this action to challenge The Lead Jerk's practices in the telephone solicitation of their products and services. Specifically, Plaintiff challenges The Lead Jerk's and The Lead Jerk's agents' illegal telephone solicitations by which they markets their products and services, illegal Calls made using an automatic telephone dialing system and robocalls, and failure to maintain a Do-Not-Call policy or list in connection therewith.

3. All of the claims asserted herein arise out of The Lead Jerk's illegal telephone solicitation campaign and are a common fact pattern.

## II. Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that

Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Philadelphia, Bucks, and Montgomery Counties, which lie within this judicial district, pursuant to 28 U.S.C. §118. Plaintiff received the phone calls to a 215-area code number, registered in this judicial district. The calls came from local 215 and 267 area code numbers. Defendants connected Plaintiff with an insurance agent licensed in the Commonwealth of Pennsylvania. Each of the Defendants has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent… ; it occurred when the [facsimile] was received."

### III.   Parties

6. Plaintiff ANDREW PERRONG ("Plaintiff") is an individual who received the alleged phone calls on his private telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who may be mailed at 1657 The Fairway #131 Jenkintown, PA 19046.

7. Defendant MANAGEMENT SOLUTIONS GROUP, LLC d/b/a The Lead Jerk (Hereinafter, "The Lead Jerk"), and formerly Doe 1, is a company located and domestically incorporated in the State of Georgia. The Lead Jerk's principal business is offering insurance telemarketing leads, primarily for burial insurance policies, to insurance agents throughout the United States. The Lead Jerk maintains a mailing address and address for service of process at 1995 HOLLAND PARK DRIVE, BUFORD, GA 30519.

8. Defendant ALISON S. LOWERY ("MRS. LOWERY"), and formerly Doe 2, is an

3

adult individual and citizen of the United States, who is the Principal and CEO of The Lead Jerk. MRS. LOWERY plays a role in the daily business operations of The Lead Jerk. MRS. LOWERY is an adult individual and citizen of the United States. As Principal of The Lead Jerk, MRS. LOWERY is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only The Lead Jerk's name. Such tortious, or ultra vires, conduct exceeds the permissible actions of corporations both in Pennsylvania, Georgia, and nationwide.

9. Defendant MATTHEW C. LOWERY ("MR. LOWERY"), and formerly Doe 3, is an adult individual and citizen of the United States, who is the namesake of The Lead Jerk. Although not officially a corporate officer, MR. LOWERY is The Lead Jerk's only other employee and plays a role in the daily business operations of The Lead Jerk, as evidenced by the company website, which almost exclusively utilizes his name and likeness. MR. LOWERY is an adult individual and citizen of the United States. As Principal of The Lead Jerk, MR. LOWERY is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in The Lead Jerk's name. Such tortious, or ultra vires, conduct exceeds the permissible actions of corporations both in Pennsylvania, Georgia, and nationwide.

10. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 4 through 100, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

11. At all times herein mentioned, MANAGEMENT SOLUTIONS GROUP, LLC d/b/a

The Lead Jerk, MRS. LOWERY, MR. LOWERY, and the Doe Defendants, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

12. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

13. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

14. The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.

15. Under the TCPA, an individual such as MRS. LOWERY or MR. LOWERY may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217, the Communications Act of 1934, as amended, of which the TCPA is a part, which reads, *inter alia*: "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be

5

deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

## IV.  Factual Allegations

16. In or about March 18, 2019, Plaintiff received the first of multiple calls made using an automatic telephone dialing system, or robocall, by Defendants and/or their agents at Plaintiff's personal telephone number, 215-725-1530, for which he is charged for the call per minute. Plaintiff had not consented to this solicitation, and Plaintiff's telephone number was on the Federal Do-Not-Call Registry.

17. This call bore the caller ID "Vorpato C" and number 215-725-9355, the number of a local resident. It is evident that this caller ID number was "spoofed" to appear as a neighborhood caller to encourage persons to answer and to conceal Defendants' identity.

18. This call was placed using an ATDS because the Plaintiff said "hello" before the call was even connected. Immediately before the connection, Plaintiff heard silence, then a machine noise akin to a "balloon popping" sound before the call was transferred to an agent.

19. This "balloon popping" sound is a characteristic sound of the ViciDial ATDS and this sound file is unique and copyrighted by ViciDial. Multiple courts have held that the ViciDial system is an ATDS, even in light of recent developments to the statutory definition of an ATDS.

20. Plaintiff spoke to a "David Striker" at "Senior Benefits," who gave Plaintiff a scripted sales pitch for a final expense insurance plan. The caller had incorrect information for the Plaintiff, but Plaintiff played along with Defendant's script in order to uncover the identity of the caller and for no other reason.

21. Upon information and belief, this call was directly placed by a call center owned or

6

contracted by the Defendants, and not by the insurance agent who was formerly a Defendant in this case, DANA LYNN.

22. As a direct result of the March 18 "qualification" call, Plaintiff received a call on March 19 at 5:51 PM and another call immediately after that at 5:51 PM, to which he did not consent.

23. These calls came from the caller ID "Wireless Caller", 267-961-9795. Again, the name of the caller identifies the caller as a cell phone to increase the chance that someone will answer.

24. Plaintiff did not answer these calls and they were sent to voicemail. Despite this, the caller left no message.

25. Along with the fact that both calls were made in rapid succession improbable for a human, this is evidence that an ATDS was used, because such systems often do not have the capacity to leave a message, and will simply disconnect the call for cost and efficiency.

26. Upon information and belief, these two calls were directly placed by a call center owned or contracted by the Defendants, and not by the insurance agent who was formerly a Defendant in this case, DANA LYNN.

27. Plaintiff received another call on March 21, 2019 from the Caller ID "Joseph Lynn", 267-317-5606. This is the telephone number for a former Defendant in this case, JOSEPH LYNN. The call occurred at 5:51 PM and was followed immediately by another one at 5:51 PM, exactly one hour prior to the call placed two days prior.

28. The fact that the calls came in rapid succession improbable for a human, with such strict timing, along with the fact that no voicemail was left also indicates that an ATDS was used for these two calls.

7

29. Upon information and belief, these calls were placed by a former Defendant in this action, DANA LYNN, but the current Defendants are liable under TCPA agency principles because they provided the illegal telemarketing lead which ultimately led to the contact.

30. After a week of peace and quiet on the telephone front, the calls began again, with two calls on March 27 at 1:32 PM and 1:33 PM. The caller ID was identical to the call on March 21. Like that call, the caller was sent to voicemail and no message was left. For identical reasons, these two calls were placed using an ATDS.

31. Upon information and belief, these calls were placed by a former Defendant in this action, DANA LYNN, but the current Defendants are liable under TCPA agency principles because they provided the illegal telemarketing lead which ultimately led to the contact.

32. Plaintiff received another call on March 28 at 9:16 AM from the caller ID "Wireless Caller", 267-961-9795.

33. During that call, Plaintiff answered and did not hear anything. Upon saying "hello," Plaintiff heard a pause, a click, and then was connected to "Katie," who was calling to follow up as a result of the March 18 call.

34. Upon information and belief, this call was directly placed by a call center owned or contracted by the Defendants, and not by the insurance agent who was formerly a Defendant in this case, DANA LYNN. Upon information and belief, "Katie" is an agent of Defendants, and not connected to the former Defendant insurance agents in this case, DANA and JOSEPH LYNN.

35. Plaintiff stated that he was busy and got a name and callback number of 267-317-

5606, the same caller ID as the March 21 and 27 calls, and was instructed to speak to an insurance agent named DANA LYNN if he was interested. In so doing, Plaintiff affirmatively demonstrated that he wanted no more calls, which were illegal regardless.

36. Despite this clear instruction not to be called, Plaintiff got a call on March 29 from 267-961-9795 at about 4:37 PM. This call had similar ATDS characteristics, like all the previous calls, since Plaintiff stated "Hello" multiple times with no response. Often, ATDS systems misclassify the caller or do not detect the system has reached a live person, and so do not transfer the call to an agent. After about 6 seconds of saying "Hello," Plaintiff finally heard a confused "Hello?" from the other end, followed by an immediate disconnection.

37. Upon information and belief, this call was directly placed by a call center owned or contracted by the Defendants, and not by the insurance agent who was formerly a Defendant in this case, DANA LYNN.

38. Plaintiff received a call from the caller ID "Joseph Lynn", 267-317-5606 at about 4:41 the same day, and spoke to DANA LYNN personally, again, after a pause and mechanical clicking sound indicative of an ATDS. MRS. LYNN stated that Plaintiff had spoken with "her assistant," presumably an agent of Defendants, previously. Plaintiff stated that the call was inopportune and that he would call Defendant back if he was interested. MRS. LYNN provided a call back number of 267-961-9795, which, upon information and belief, is a call center owned by Defendants.

39. Upon information and belief, this call was placed by a former Defendant in this action, DANA LYNN, but the current Defendants are liable under TCPA agency principles because they provided the illegal telemarketing lead which ultimately led to the contact.

40. Despite this repetition of a desire not to receive calls, Plaintiff received one final

"salvo" call on April 1 at 11:36 AM from the same caller ID, 267-961-9795. Like the previous calls, this call had distinct clicking, pauses, and machine noise which occurred prior to transfer of the call. Plaintiff was eventually transferred to the insurance agent DANA LYNN, who stated that she would be in the Philadelphia area and wanted to visit Plaintiff to discuss free information about burial insurance. Plaintiff unequivocally declined the offer and stated that he would call back if he ever became interested. LYNN provided the same number for callback of 267-961-9795, which, upon information and belief, is a call center owned by Defendants.

41. Upon information and belief, this call was directly placed by a call center owned or contracted by the Defendants, and not by the insurance agent who was formerly a Defendant in this case, DANA LYNN, to whom this call was eventually transferred.

42. Of course, Defendants are liable for violations of the TCPA made during calls they placed themselves, since they placed the calls themselves and actually incurred the TCPA violations complained of.

43. Defendants are also vicariously liable for violations of the TCPA made by the LYNN insurance agents because they were acting under an agency relationship with the LYNN insurance agents, and are therefore jointly and severally liable for all relief prayed for in the complaint.

44. More specifically, Defendants are vicariously liable for the calls placed by LYNN in that they pretended to be agents of LYNN, including by using DANA LYNN's name on the calls to Plaintiff. Defendants were notified by LYNN of their use of illegal methods to contact Plaintiff, but did not investigate, but rather continued to call Plaintiff and warranted to LYNN that the source of the leads was valid, and in so doing, ratified the bad acts of LYNN and encouraged her to violate the TCPA based on their representations to her. In so doing,

Defendants created an agency relationship with LYNN by ratifying LYNN's conduct. *Henderson v. United Student Aid Funds, Inc.*, No. 17-55373 (9th Cir. Mar. 22, 2019). (Holding that ratification can create an agency relationship in the context of the TCPA).

45. When considering individual officer liability, other Courts have agreed that a Corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See*, e.g., *Jackson v. Five Star Catering, Inc., v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013), which stated that "[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *See also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011), stating that "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."

46. The LOWERY Defendants are personally liable under the "participation theory" of liability because they are the Principal owners of The Lead Jerk, knew of The Lead Jerk's violations, presumably paid for the services of call centers, including foreign call centers, used to place the calls, and directed both the call centers and the insurance agents to whom they sold leads to continue making those violations, if not having done so themselves. This is because they personally authorized and oversaw each of The Lead Jerk's marketing processes. For instance, see http://theleadjerk.com/, archived at https://archive.is/Y6Fku (prominently featuring Defendant MATTHEW LOWERY as the source of the leads and the namesake for "The Lead Jerk"). Defendant ALISON LOWERY is so connected to the operations of The Lead Jerk so as to make her liability just as strong as MR. LOWERY. Upon information and belief, Defendant ALISON LOWERY pays for the telephone service listed on The Lead Jerk's website, in addition

to having the company solely in her name as a corporate officer and CEO. Furthermore, the LOWERY Defendants are also personally liable because they are responsible for ensuring Company' employees' TCPA compliance.

47. Because Plaintiff asked, through former Defendant DANA LYNN, to receive Defendants' Do-Not-Call policy and be placed on Defendants' Do-Not-Call list and did not, it is evident that Defendants do not maintain such a policy. In fact, Defendants cut off contact with LYNN when confronted with this lawsuit. Likewise, based on this fact, and the fact that Defendants have no clue who they are calling and use trickery and confusion to make a sales pitch, it is clear that Defendants do not have any Do-Not-Call lists or procedures in place. Based on the nature of their illegal activities, Defendants' noncompliance with the law in this regard is unsurprising.

48. Based on the inaccurate information regarding the calls, the inability to process do-not-call requests, and the inability to know whether a person has spoken to an employee or insurance agent before, it is clear that Defendants used a predictive dialer to call Plaintiff. A predictive dialer is an ATDS. Moreover, there exists more than enough circumstantial evidence to prove that Defendants used an ATDS to contact Plaintiff. In some of the calls, Plaintiff heard a copyrighted sound which indicated a ViciDial ATDS. No normal call has machine noise, a pause, and a click before an agent comes on the line. No normal caller calls the Plaintiff after explicitly being told not the call. The calls were therefore clearly sent using a scripted "automatic telephone dialing system."

49. Based on the averments above, Plaintiff has demonstrated that each of the calls were made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

50. Plaintiff received the calls on his private telephone, which is a telephone for which he is charged for the calls, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

51. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a… cellular telephone service… or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii). As stated immediately above, the calls were placed using an automatic telephone dialing system to Plaintiff's private telephone line, on which he is charged for the call.

52. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

53. Plaintiff was harmed by the calls. He was temporarily deprived of legitimate use of his phone because his phone line was tied up, he wasted energy and stress in answering a call, his telephone electricity was depleted, he was charged for the calls, and his privacy was improperly invaded. Moreover, the calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

54. Plaintiff adequately confirmed identity for each and every call so as to establish liability of Defendants, as more fully outlined above.

55. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

56. Plaintiff did not provide any one, more, or all Defendants, nor any agent of

13

Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone that utilized an "automatic telephone dialing system" or otherwise to transmit a message or make calls.

57. As a point of fact, to the extent that "consent" was supplied during the calls, that was done in order to discover the identity of the caller, not for a sales pitch, and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call."

58. Plaintiff had no prior business relationship with any one, more, or all of Defendants.

59. The telephone Sales Calls therefore violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(c)(3)(F), 47 U.S.C. § 227(e), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR § 64.1200(a)(1)(iii), 47 CFR § 64.1200(a)(1), and 47 C.F.R. 64.1200(c)(2).

## V. Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

60. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

61. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C.

14

§ 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

63. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

64. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

65. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

66. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

67. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

68. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

69. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

70. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

71. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

72. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

73. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

74. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

16

75. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

76. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

77. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

### Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

78. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

79. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

**WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**

### VI.    Prayer for Relief

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8;

2. For awards of $1,500 for each knowing/willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing; Total statutory damages: : **$66,000** (Eleven counts each of: sales call, ATDS call, failure to put Plaintiff's number on Defendants' Do-Not-Call list, and failure to provide Plaintiff a copy of Defendants' Do-Not-Call policy, at $500 per count of each, with treble damages for each.)

4. Punitive damages to punish Defendants for their willful, illegal, and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate tortious conduct;

5. Prejudgment interest at the maximum legal rate;

6. Costs of suit herein incurred; and

7. All such other and further relief as the Court deems proper.

### VII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: **June 19, 2019**

/s/

Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com